IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 FEB 20  PM 3: 54

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ KLC
DEPUTY

MARC WYATT #1853251,

              **Plaintiff,**

-vs-

              **Case No.  A-13-CA-191-SS**

ROBERT ANDERSON, JAMES DAVENPORT,
MATTHEW VERNON, ROBERT MADDEN
INDUSTRIES, and BASTROP COUNTY
SHERIFF'S OFFICE,

              **Defendants.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Marc Wyatt's Amended Complaint [#33]; Plaintiff Mark Wyatt's Motion for Partial Summary Judgment [#39], and Defendants Robert Anderson and James Davenport's Response [#40]; Defendants Robert Anderson and James Davenport's Amended Motion for Summary Judgment [#42], and Plaintiff Marc Wyatt's Response [#51]; the Report and Recommendation of the United States Magistrate Judge [#54], and Plaintiff Marc Wyatt's Objections [#59]; Plaintiff Marc Wyatt's Objection to Text Order Denying Motion to Stay [#56], and Plaintiff Marc Wyatt's Objection to the Denial for Stay of Defendant's Motion for Summary Judgment [#58]; Defendants Robert Anderson and James Davenport's Motion to Quash [#61]; and Plaintiff Marc Wyatt's Motion in Opposition to Defendants' Motion to Quash [#62].   Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

All matters in this case were referred to United States Magistrate Judge Mark Lane for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Wyatt is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Nevertheless, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.

## Background

At the time he filed his original complaint, Plaintiff Marc Wyatt was confined in the Lee County Jail. He was subsequently transferred to the Eastham Unit of the Texas Department of Criminal Justice, Correctional Institutions Division. Wyatt files this action pursuant to 42 U.S.C. § 1983, alleging Bastrop County Investigator Robert Anderson and Bastrop County Deputy James Davenport falsified evidence to place Wyatt at the scene of a burglary on March 31, 2011, at Robert Madden Industries. Wyatt alleges Anderson used known false statements and tainted evidence to secure a warrant for his arrest, and later used false evidence and false statements before a grand jury to obtain an indictment. Wyatt claims Anderson intentionally withheld evidence showing fingerprints found at the crime scene did not belong to Wyatt. Wyatt contends Anderson and Davenport are responsible for his false arrest, which caused Wyatt emotional and mental stress, monetary loss, and false imprisonment. Wyatt also accuses Matthew Dale Vernon, manager of Robert Madden Industries, of conspiring with the Bastrop County Sheriff's Office to deprive Wyatt of his civil rights.

Wyatt sues Robert Anderson, James Davenport, Robert Madden Industries, Matthew Dale Vernon, and the Bastrop County Sheriff's Office, and he seeks $100,000 from each Defendant. Service has been perfected as to Defendants Anderson and Davenport, and the remaining Defendants have not been served.

Wyatt moves for a partial summary judgment against Anderson, arguing Anderson knowingly and intentionally made false statements to an independent intermediary in order to obtain an arrest warrant. He concludes the intermediary lacked probable cause to issue the arrest warrant. In response, Defendants Anderson and Davenport assert their entitlement to qualified immunity, and deny Wyatt is entitled to a motion for partial summary judgment. In addition, they move for summary judgment, arguing the arrest warrant issued by the judge and the indictment issued by the grand jury establishes probable cause, and breaks the chain of causation. They rely on *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) and *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994).

According to Anderson, he was the lead investigator assigned to the burglary of Robert Madden Industries, a supply store for heating and air conditioning companies. The store was burglarized on March 31, 2011, at 2:51 a.m. HVAC equipment was stolen at a value of $1,778.28. As part of his investigation, Anderson reviewed the reports of the Bastrop County Deputies, who responded to the burglary call as well as the evidence collected at the crime scene.

Bastrop County Deputies James Miller, Brandon Horak, Adrian Selvera, and Raul Delgado responded the night of the burglary. Upon arrival, the deputies documented the crime scene, including lifting fingerprints off a plastic tube, cleared the building, and waited for the arrival of the property owner. They later met with Matthew Vernon, the branch manager of the store, who arrived at the scene after the deputies. The next morning Defendant Davenport, another Deputy, went to the

scene of the burglary to identify its location.  Upon arrival, Vernon gave Davenport a Wal-Mart receipt.  Vernon stated he found the receipt in one of two trash cans found on the side of the building, which had not been there the night before around 8:00 or 9:00 p.m. when Vernon and his workers left for the night.  Vernon did not know where they came from or how they got there.  The receipt indicated they had been purchased at midnight the night before, along with a Dr. Pepper. Davenport, through his education, training, and experience, knew burglars commonly use large containers to hold and transport stolen property more quickly.  Davenport suspected the burglars used the trash cans for the burglary, and then discarded them without realizing the receipt was left in the bottom of one of the trash cans.  Davenport noted the receipt indicated the trash cans had been purchased with a Visa card.  Davenport secured the trash cans and the receipt as evidence, and the trash cans for fingerprint processing.

Investigator Anderson later contacted the Wal-Mart Manager and learned the Visa card used to purchase the trash cans and Dr. Pepper belonged to Wyatt.  Anderson attests he reviewed a video from Wal-Mart, depicting Wyatt purchasing two large trash cans and a Dr. Pepper on March 30, 2011, near midnight.  Anderson estimated the trash cans were purchased by Wyatt approximately two and a half hours before the Robert Madden Industries burglary.

With this evidence, Anderson contacted Wyatt and met with him on April 7, 2011, at a Criminal Investigation Division interview room.  Upon meeting with Wyatt, Anderson confirmed in his mind Wyatt was the person in the video purchasing the trash cans.  Wyatt filled out the top portion of the voluntary statement and was given his *Miranda* warnings.  According to Anderson, when he advised Wyatt of the trash can purchase, Wyatt denied purchasing them.  When shown the video, Wyatt allegedly admitted purchasing the cans but refused to admit he was the person on the

video. When shown the receipt, Wyatt allegedly admitted his credit card was used, his signature was on the receipt, and the credit card had never left his possession. Anderson attests Wyatt became evasive and confrontational, but he admitted he owned an HVAC business and had been to Robert Madden Industries on previous occasions.

Anderson asserts Wyatt admitted his prior criminal history of thefts could lead someone to believe he committed the burglary, but he denied it was him. Based on Wyatt's admission and his prior deceptive statements, Anderson felt Wyatt had a motive to steal the HVAC equipment. Anderson admits he prepared and submitted a probable cause affidavit to Justice of the Peace Judge Raymah Davis, who reviewed it, found probable cause, and issued a warrant for Wyatt's arrest. Anderson denies there was any fabrication or falsification of evidence in his investigation.

In his Motion for Partial Summary Judgment and his Response to Defendants' Motion for Summary Judgment, Wyatt gives his version of the events. Among other things, he states on April 7, 2011, when he was interviewed by Anderson, he refused to waive his rights and requested an attorney. Wyatt claims, despite his request, Anderson continued to question him regarding the burglary. To prove Anderson fabricated or falsified the evidence, Wyatt points out the trash cans were purchased at 11:57 p.m. on March 30, 2011, almost three hours before the burglary. Wyatt contends Anderson was dishonest because his affidavit in support of his request for an arrest warrant stated the two trash cans were found at the scene of the crime two and half hours after the purchase when in fact the trash cans were not found by Vernon until he returned to Robert Madden Industries the following morning. Wyatt also argues the evidence report states green trash cans were found at the crime scene, but Defendants describe the trash cans as "dark colored" or "black." Wyatt also contends Davenport's affidavit submitted in support of Defendants' Motion for Summary Judgment

is misleading because Davenport combined Vernon's two statements: (1) "He and his workers left the building at about 8:00 pm or 9:00 pm last night so none of them could have left them" and (2) "that when it got daylight he noticed a couple of trash cans on the side of the building that were not there the night before" into a statement which provided "Mr. Vernon informed me that the trash cans had not been at the location the night before when his employees left at 9:00 pm." Wyatt also contends the evidence was falsified because Davenport's statements refer to the receipt as a "Wal-Mart receipt," but Anderson in his affidavit for an arrest warrant referred to it as a "Visa Credit Card receipt." Wyatt also refutes Anderson's statement that Wyatt denied purchasing the trash cans. Wyatt instead states he told Anderson he could not remember purchasing the trash cans. Wyatt additionally denies he admitted his prior history of thefts could lead someone to believe he committed the burglary.

**Analysis**

I.     **Legal Standards**

A.     **28 U.S.C. § 1915(e)**

Service has not been perfected as to Defendants Bastrop County Sheriff's Office, Matthew Vernon, and Robert Madden Industries. Accordingly, the Court will analyze Wyatt's claims brought against these Defendants pursuant to 28 U.S.C. § 1915(e).

An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief

may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal

for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). When reviewing a plaintiff's complaint, the court must construe the plaintiff's allegations as liberally as possible. *Haines v. Kerner*, 404 U.S. 519 (1972). Petitioner's pro se status, however, does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

**B.     Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.      Application

### A.      Defendant Bastrop County Sheriff's Office

The Bastrop County Sheriff's Office is not a legal entity capable of being sued. *See Darby v. Pa. Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (holding police and sheriff's departments are governmental subdivisions without capacity for independent legal action)*; Guidry v. Jefferson Cnty. Detention Ctr.*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding the Jefferson County Detention

Center is not a legal entity subject to suit).  Therefore, Wyatt's claims against this Defendant must be dismissed.

**B.    Defendants Matthew Vernon and Robert Madden Industries**

Matthew Vernon and Robert Madden Industries, the victims of the burglary, are not state actors.  The provisions of 42 U.S.C. § 1983 state every person who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party.  A civil rights plaintiff must show an abuse of government power which rises to a constitutional level in order to state a cognizable claim.  *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980).  Section 1983 suits may be instituted to sue a state employee, or state entity, using or abusing power which is possessed by virtue of state law to violate a person's constitutional rights.  *See Monroe v. Pape*, 365 U.S. 167, 184 (1961); *accord Brown v. Miller*, 631 F.2d 408, 410–11 (5th Cir. 1980).

A private person may be amenable to suit only when the person is a willful participant in joint action with the State or its agents.  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  To prevail on a § 1983 conspiracy claim against an otherwise private party, the plaintiff must allege and prove an agreement between the private party and persons acting under color of state law to commit an illegal act and an actual deprivation of the plaintiff's constitutional rights in furtherance of the agreement. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004).  More particularly, where the plaintiff claims a private party acted under color of law as part of a conspiracy to effect an unlawful arrest, the Fifth Circuit has consistently held the plaintiff must demonstrate "the police in effecting the arrest acted in accordance with a 'preconceived plan'

to arrest a person merely because he was designated for arrest by the private party." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985).

Wyatt's conclusory allegation that Matthew Vernon conspired with Bastrop County Sheriff's Office to deprive Wyatt of his civil rights is insufficient to allege there has been a conspiracy to violate his constitutional rights. *See Twombly*, 550 U.S. at 555 ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action."). The factual basis of Wyatt's claims against Vernon and Robert Madden Industries appears to be Vernon notified Davenport he found trash cans at the scene of the crime which had not been at Robert Madden Industries the night before, and a receipt was in the bottom of one of the cans. Even when liberally construed in Wyatt's favor, these facts do not allow the Court to reasonably draw an inference that Vernon or Robert Madden Industries willfully acted in concert with Anderson and Davenport to effect an unconstitutional arrest of Wyatt.

In his Objections, instead of providing any basis for suit against these private actors, Wyatt suggests Vernon may actually be a "fictitious person" because the U.S. Marshal summons form indicates the individual who went to serve Matthew Vernon at 704 W. Highway 71 could not identify or locate Vernon. Also, Wyatt points out he has been provided no proof Vernon ever filed a complaint or a property loss form, and all statements allegedly filed by Vernon have not been disclosed to Wyatt. Needless to say, suggesting Vernon is not real does not demonstrate Vernon acted in concert with the State or its agents to deprive Wyatt of his constitutional rights.

Next, Wyatt argues Vernon, when he told Davenport about the trash cans, said he did not know where they came from, but Wyatt contends if Vernon had the Wal-Mart receipt, as Davenport's report indicates, then he would know where the trash cans came from—Wal-Mart.

Wyatt's reading of Davenport's report and record of Vernon's statements are strained at best. Vernon was merely telling Davenport these trash cans were not there the night before when he and his workers left. When he found them the next morning, he did not know who they belonged to or how they got to side of the building outside Robert Madden Industries. When he found the Wal-Mart receipt and gave it to Davenport, of course he knew technically "where they came from," but the point was he did not know who brought them there and why. The fact remains Wyatt only makes conclusory allegations insufficient to support even a suspicion of a legally cognizable right of action concerning Matthew Vernon and Robert Madden Industries.

In sum, Wyatt's amended complaint does not allege specific facts to support a finding Vernon or Robert Madden Industries were willful participants in joint activity with the State or its agents. Accordingly, Wyatt's claims brought against Defendants Vernon and Robert Madden Industries must be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e).

## C.   Defendants Robert Anderson and James Davenport

Defendants Anderson and Davenport assert their entitlement to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. *Jackson v. City of Beaumont*, 958 F.2d 616 (5th Cir. 1992). "[Q]ualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who violate the law.'" *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To rebut the qualified immunity defense, the plaintiff must show: (1) he has alleged a violation of a clearly established constitutional right, and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required the first of these criteria—whether plaintiff's facts allege a constitutional violation—be decided at the outset. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Recently, however, the Court held lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1.    False Arrest

First, Defendants Anderson and Davenport incorrectly argue the arrest warrant signed by the judge and the indictment issued by the grand jury broke the chain of causation for false arrest in this case. Wyatt, though, argues the evidence shows Anderson fabricated and falsified the information in his probable-cause affidavit, and presented falsified and fabricated evidence to the grand jury.

To prevail on his claim Anderson prepared a false probable-cause affidavit, Wyatt would be required to show Anderson knowingly provided false information to secure the arrest warrant or gave false information in reckless disregard of the truth. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). The arrest may still be constitutionally valid if, when the allegedly false or malicious

-12-

material in a probable-cause affidavit is excised, sufficient material remains in the affidavit to support a finding of probable cause. *Id.* at 171–72.

Probable cause exists when the facts within the officer's knowledge and the facts of which he has reasonably reliable information would be sufficient to believe the suspect was committing or had committed an offense. *U.S. v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973). In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution "out of fear of being sued." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992). The Court examines the totality of the circumstances to decide "whether there is a 'fair probability that a crime occurred." *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (citation omitted). A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Id.*

In this case, the probable-cause affidavit included Wyatt "denied having any knowledge buying the trash cans." Excising the statement Wyatt denied having knowledge of the purchase does not alter the conclusion probable cause existed. It is also immaterial if the receipt is referred to as a Visa credit card receipt or a Wal-Mart receipt. The affidavit also included the trash cans were found at the scene of the crime two and half hours after the purchase when instead they were found later in the morning at daylight. Excising "2 ½ hours" from the affidavit also does not defeat probable cause. The remaining information in the affidavit was sufficient to support a finding of probable cause for Wyatt's arrest. *See Hale v. Fish*, 899 F.2d 390, 399 (5th Cir. 1990).

In his Objections, Wyatt urges and re-urges his arguments concerning the falsity of various portions of Anderson's affidavit in support of an arrest warrant. First, Wyatt challenges Anderson's statement, "On 03-31-2011, Matthew Vernon made a report of Burglary of a Building, that occurred

at 704 Hwy. 71 W. Unit C, in Bastrop County, to Deputy Brandon Horak of the Bastrop County Sheriff's Office." Wyatt alleges Vernon never filed any report. Whether Vernon filed a report or not, there is no dispute a burglary occurred. In Deputy Horak's report, he states, "On March 31, 2011 at approximately 2:59 a.m., I was dispatched to 704 Unit C HWY 71 in reference to a burglary alarm. I was advised that the company name was Robert Madden Industries." Whether there was an actual report from Vernon is not clear, but it is immaterial. The point is there was a burglary. Excising the statement "Vernon made a report of Burglary of a Building" does not change the probable cause determination.

In addition, Wyatt also challenges Anderson's statement he "learned from the complainant [Vernon], information on the possible suspect in this 'Burglary' case." Wyatt argues Anderson never actually met with Vernon, but it was Davenport who learned about the trash cans and receipt from Vernon. The summary judgment evidence shows it was Davenport who actually met with Vernon, and then Davenport recorded what he found in his report and submitted the trash cans and receipt as evidence. Anderson learned of the trash cans and receipt through Davenport's report, so the Court can see how the statement Anderson "learned from the complainant" could be misleading. It is irrelevant, however, whether Anderson learned the information directly from Vernon or indirectly through Davenport. While Anderson's affidavit may be inartfully written and a bit confusing, he is not required to be perfect. Excising Anderson's assertion he learned of information "from the complainant" does not change the conclusion probable cause existed.

Wyatt re-urges his objection concerning the mixed use of the terms "Visa credit card receipt" and "Wal-Mart receipt." Wyatt suggests the "Wal-Mart receipt" is the common receipt given to customers while the "Visa credit card receipt" is retained by Wal-Mart. Therefore, the receipt found

-14-

in the trash can must have been the "Wal-Mart receipt," and when it was referred to as the "Visa credit card receipt," this must have been false.  Again, the Court finds it irrelevant whether the receipt found in the trash can is referred to as the "Wal-Mart receipt" or the "Visa credit card receipt."  Both receipts contain information indicating there was a purchase from Wal-Mart with a Visa credit card.  Referring to them interchangeably, while perhaps technically incorrect according to Wyatt's contentions regarding receipt policies, is perfectly reasonable.  More importantly, it is irrelevant.  The point is a receipt was found in the trash can reflecting a purchase with a Visa credit card at Wal-Mart.  This receipt led Anderson to the Wal-Mart manager, to the credit card owner's identity (Wyatt), and to the camera footage (confirming it was Wyatt who made the purchase).  This chain of events is more than sufficient for a probable cause finding.

Next, Wyatt objects to Anderson's affidavit when it discusses Wyatt's visit to the Bastrop County Sheriff's Office after Anderson discovered the trash cans had been purchased with Wyatt's credit card.  Upon Wyatt's arrival, Anderson confirmed he was an identical match to the individual in the Wal-Mart video recording.  Anderson then states:

> Mr. Wyatt filled out the top portion of a Voluntary Statement, while reading allowed [sic] his Miranda Warning.  Mr. Wyatt signed the statement acknowledging his understanding of his rights.  When I advised him of my findings, and linking him to the burglaries, Mr. Wyatt refused to fill out his statement.  Mr. Wyatt was shown video footage, where he stated that the person in the video "could" be him, and denied having any knowledge of buying the trash cans.

Wyatt asserts he requested his attorney upon being given his Miranda warnings, but Anderson continued to question him.  Therefore, Wyatt contends any statement obtained by Anderson after Wyatt's request for an attorney should be removed from the affidavit.

-15-

As an initial matter, assuming Anderson did indeed violate the Miranda procedures, these violations do not amount to violations of the Constitution itself and, as such, fail to raise a cause of action under § 1983. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (collecting cases). In addition, the Court concludes excising any statement made by Wyatt under questioning does not alter the conclusion there was plenty of support for a reasonable officer to find probable cause. The only alleged statements Wyatt made which appear in the affidavit are the person in the video could be him and a denial of having any knowledge of buying the trash cans. Neither one of these alleged statements is necessary to a finding of probable cause.

Accordingly, Wyatt has failed to allege a valid claim for false arrest. In addition, the summary judgment evidence shows Defendants Anderson and Davenport were not objectively unreasonable in concluding there was probable cause for Wyatt's arrest.

### 2.     Malicious Prosecution

Construing Wyatt's claims liberally, he may also be asserting a claim of malicious prosecution.[1] Federal law, however, does not recognize an independent constitutional claim of malicious prosecution. *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812–13 (5th Cir. 2010); *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). The claimant must instead allege "that officials violated specific constitutional rights in connection with a malicious prosecution." *Cuadra*, 626 F.3d at 812 (internal quotation marks and citation omitted); *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009). While a malicious prosecution claim alone is not cognizable under § 1983, "additional government acts that may attend the initiation of a criminal

---

[1] Although Wyatt does not include any mention in his Amended Complaint of a malicious prosecution claim, Wyatt states in his Response to Defendants' Motion for Summary Judgment he has brought his complaint under § 1983 for false arrest, malicious prosecution and conspiracy concerning his arrest and indictment for burglary of a building.

charge could give rise to claims of constitutional deprivation." *Castellano*, 352 F.3d at 953. "[T]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example . . . ." *Id.* To prevail, a § 1983 plaintiff must identify specific constitutional rights which were violated in connection with a malicious prosecution. *Cuadra*, 626 F.3d at 812. Wyatt appears to assert his malicious prosecution claim follows his claim of false arrest.

Under Texas law, "[a] plaintiff in a malicious criminal prosecution claim must establish (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

In this case, Wyatt's claim is defeated because probable cause supported his arrest, there is no competent summary judgment evidence showing malice was involved with regard to the filing of the burglary charge, and Wyatt has not shown he was innocent of the burglary. Although the burglary charge was dismissed, it was done so pursuant to a motion to dismiss filed by the prosecutor indicating Wyatt had a pending first degree felony charge in Lee County, and Wyatt would be prosecuted for this offense, which had a higher punishment range. Accordingly, Defendants Anderson and Davenport are entitled to qualified immunity.[2]

---

[2]To the extent Wyatt's claim is analyzed as a state law claim, Anderson and Davenport are protected by official immunity. Texas recognizes an "official immunity" defense to state law claims such as malicious prosecution. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). State actors are entitled to official immunity from state law liability for "(1) the performance of discretionary duties (2) that are within the scope of the employees' authority, (3) provided that the employee acts in good faith." *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002); *see also DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 652 (Tex. 1995). "Texas law of official immunity is substantially the same as

In his Objections, Wyatt argues he has been deprived complete discovery in this case, and therefore has been unable to pursue his allegations of malicious prosecution. Wyatt points out he filed a Motion to Stay the Motion for Summary Judgment [#47] based on the lack of discovery compliance, which the Court denied. Wyatt has since filed two Objections [## 56, 58] to this denial, which the Court addresses below in Part III, overruling both Objections. In short, Wyatt's complaints concerning discovery are overruled. The Court has broad discretion over discovery matters, and while Wyatt was diligent in pursuit of his discovery, he never filed a motion to compel. More importantly, he fails to show additional discovery is necessary because his requests would not create a genuine issue of material fact as to his false arrest or malicious prosecution claims.

## D.   Municipal Liability

Wyatt's claims against the Defendants in their official capacities are claims made against Bastrop County. A county, however, is not liable under § 1983 on the theory of respondeat superior; a municipality is only liable for acts directly attributable to it "through some official action or imprimatur." *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability, the plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *Valle*, 613 F.3d at 541–42 (internal citations omitted). Nowhere in Wyatt's amended complaint are allegations a city policy, practice, custom, or procedure of Bastrop County or of the Sheriff's Department was the moving force behind the alleged violations of his

---

federal qualified immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997); *see also Hart v. O'Brien*, 127 F.3d 424, 452 (5th Cir. 1997) (holding that where officers "reasonably believed they had probable cause to proceed agaisnt [the plaintiff]," as determined in the federal qualified immunity analysis, the plaintiff "cannot assert a claim for malicious prosecution" under Texas law).

constitutional rights.  Moreover, as shown above, Wyatt has failed to establish his constitutional rights were violated.

## III.   Objections to Denial of Motion to Stay

On September 16, 2013, prior to the entry of the R&R, Wyatt filed a Motion to Stay Defendant's Motion for Summary Judgment [#47] pursuant to Federal Rule of Civil Procedure 56(d).  Wyatt complained the Defendants had not yet provided all of the requested discovery. Specifically, Wyatt claimed the Defendants had not given him: (1) a transcript of the interview between Anderson and Wyatt; (2) the supposed complaints filed by Vernon in connection with the property he lost in the burglary; (3) photographs of the crime scene; (4) photographs of the evidence collected by Davenport; and (5) the "inner-office memos contained in the District Attorney's file." *See* Pl.'s Mot. Stay Defs.' Mot Summ. J. [#47].  This motion was denied in a text order on September 25, 2013.

Wyatt filed an Objection to the text order denying the motion to stay.  In this Objection, Wyatt acknowledges his response to Defendants' motion for summary judgment is inadequate and lacking in proof.  Wyatt asserts this deficiency is due to Defendants' continued refusal to comply with discovery requests.  Specifically, Wyatt references requests for letters and memos to Wyatt's attorney from the District Attorney's Office "concerning evidence not found in the District Attorney's file but contained in police reports." Pl.'s Objection [#56].  Wyatt also refers to Vernon's property loss forms, forensic evidence in the form of fingerprint results, photographs of the crime scene, photographs of the evidence, answers to Wyatt's remaining interrogatories, and other items. *See id.*  Wyatt filed a second Objection to the order denying his motion for stay in which he reiterates his claim Defendants have refused to comply with discovery requests making it impossible for him

to prove his claims. *See* Pl.'s Objection [#58]. Wyatt provides a list of the items he has requested and still seeks, which essentially covers the items described above.

Generally, Rule 56(d) motions are favored and should be liberally granted. *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999). A district court, however, has broad discretion over discovery matters and may deny such a continuance if the party seeking it has failed to pursue discovery diligently enough to warrant relief or has failed to justify why the relief should be granted. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). To support a motion for additional discovery the movant must show: (1) why additional discovery is necessary and (2) "how the additional discovery will likely create a genuine issue of material fact." *Stearns Airport Equip.*, 170 F.3d at 534–35. The claims must be supported with some particularity; a plaintiff "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Beattie*, 254 F.3d at 606 (quoting *Krim v. Banc Tex. Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).

First, the record indicates Wyatt has pursued discovery diligently. As early as May 3, 2013, Wyatt filed a Motion to Subpoena Records of Anderson Law Firm [#15], which was appropriately denied without prejudice because Wyatt: (a) failed to explain why records were relevant, and (b) why he could not simply request a copy of his file from his attorney. *See* Order of May 14, 2013 [#19]. Wyatt also filed a Motion for Discovery [#17] on May 8, 2013, in which he made broad requests for discovery. The Court dismissed this motion and instructed Wyatt to direct his discovery requests to the Defendants, not the Court.

Later, in September, Wyatt again filed a Motion for Subpoena of Records [#45], in which he explained to the Court he never received his case file from his attorney despite sending the firm

multiple letters.  Specifically, Wyatt asserted he wanted communications between his attorney and the District Attorney indicating the District Attorney admitted Defendant Anderson's probable cause affidavit was false and the evidence used was false.  He was also seeking various other discovery such as witness statements, photographs of the evidence, and so forth.  Wyatt filed another Motion for Subpoena of Records [#48], seeking documents in possession of various witnesses.  Wyatt lists those witnesses and the desired documents.  Both of these Motions for Subpoena of Records were granted by the Court.  *See* Order of Sep. 27, 2013.

Since this time, Wyatt has filed his Objections to the order denying his motion to stay, asserting his attorney, the Defendants, and the various witnesses have still not complied with his discovery requests.  Based on the foregoing, it appears Wyatt has pursued discovery diligently, but he has been ineffective in obtaining it.  The Court notes Wyatt never filed a motion to compel with the Court.  While he filed a "motion for discovery" early on in the case, this motion was appropriately denied, and Wyatt was told to handle discovery directly with those from which he sought information.  If his efforts to obtain discovery continued to be thwarted, Wyatt should have filed a motion to compel.  Instead, he filed motions for subpoena of records, which were granted.  The proper mechanism, however, for asking Court to intervene when discovery is continually denied is a motion to compel.  Moreover, Wyatt, for reasons described below in Part IV, did not serve his subpoenas in compliance with the Federal Rules of Civil Procedure.  While the Court construes a pro se litigant's pleadings liberally and understands Wyatt is attempting to conduct discovery from prison, the Court cannot litigate Wyatt's case for him.  Wyatt did not use the discovery rules and procedures effectively in order to obtain his desired discovery, and it is due to his own failure to properly litigate his own case.

-21-

Second and more importantly, Wyatt has failed to justify why the relief should be granted. Specifically, Wyatt fails to show the Court why additional discovery is necessary and how the additional discovery will likely create a genuine issue of material fact. Much of Wyatt's requested discovery will not change the fact there was probable cause for his arrest. A transcript of the interview between Anderson and Wyatt, the property loss forms filed by Vernon (which Wyatt claims do not exist), photographs of the crime scene, photographs of the evidence, and so forth are part of Wyatt's attempt to prove his innocence, but whether Wyatt is innocent or not does not alter the conclusion probable cause existed for his arrest. Moreover, Wyatt's attempts at discovery mostly amounts to a fishing expedition to prove there was a massive conspiracy to falsify evidence in order to secure his arrest. Wyatt, though, provides no evidence whatsoever to substantiate such a theory. For instance, there is no indication Anderson, Davenport, or any of the law enforcement officials involved previously knew Wyatt or had any reason at all to falsely arrest Wyatt, much less maliciously prosecute him.

The only discovery request which comes close to being relevant and sufficiently particular is Wyatt's request for communications between his attorney and the District Attorney. In his Objection to the denial of the motion to stay, Wyatt seeks letters and memos to Wyatt's attorney from the District Attorney's Office "concerning evidence not found in the District Attorney's file but contained in police reports." Pl.'s Objection [#56]. In one of his Motions for Subpoena of Records [#45], Wyatt asserted he wanted communications between his attorney and the District Attorney indicating the District Attorney admitted Defendant Anderson's probable cause affidavit was false and the evidence used was false. What exactly Wyatt thinks are contained is these supposed communications is not altogether clear, but in his Objections to the R&R [#59], Wyatt

claims Defendant Anderson told the prosecutor the evidence in Wyatt's case was "screwy." Objections to the R&R [#59], at 6. Furthermore, Wyatt claims the District Attorney told his attorney part of the reason the District Attorney was dismissing the case was due to "shoddy police work." *Id.*

Wyatt's own requests indicate these communications between his attorney and the District Attorney, if they exist, do no more than show Defendant Anderson was a bit sloppy in his investigation. As described in Part II(C)(1), however, there was plenty of evidence to support a finding of probable cause even if you remove the aspects of the affidavit Wyatt argues are false or misleading. Therefore, this discovery request would not create a genuine issue of material fact concerning the false arrest claim. Moreover, establishing Anderson's work was shoddy would not create a genuine issue of material fact concerning the malicious prosecution claim. At most, it could show Anderson was negligent, but Anderson is not required to be perfect. *See Martin*, 973 F.2d at 453. Without a showing of malice, Anderson would still be entitled to qualified immunity.

In sum, the Court has broad discretion over discovery matters. While Wyatt was diligent in pursuit of his discovery, he never filed a motion to compel. Furthermore, he fails to show additional discovery is necessary because his requests would not create a genuine issue of material as to any of his claims.

## IV.  Motions to Quash

Most recently, Defendant Bastrop County has filed a Motion to Quash [#61] Wyatt's subpoenas issued to: (1) Brigitte Buscha, evidence technician; (2) Greg Gilleland, Assistant District Attorney; (3) Theresa Stoppelberg, custodian of records; (4) Martin Placke, Lee County District Attorney; (5) Raymah Davis, District Judge; (6) James Rash, Wal-Mart manager; and (7) the

Anderson & Anderson Law Firm. Defendant Bastrop County argues because this case has already proceeded to the dispositive motion stage, and the Magistrate Judge has already issued a report and recommendation on Defendants' Motion Summary Judgment, the subpoenas should be quashed. Bastrop County argues Wyatt is attempting to conduct discovery outside the scheduling order and outside the discovery deadline. In addition, Bastrop County argues the subpoenas are defective on their face.

Wyatt filed a Motion in Opposition to Defendant's Motion to Quash Subpoenas [#62], which the Court construes as a Response. Wyatt reiterates his contention that Defendants have failed to comply with the discovery rules. Wyatt further argues the Motion to Quash is not timely, pursuant to Federal Rule of Civil Procedure 45. Finally, Wyatt points out the parties served with subpoenas are not represented by the Law Offices of Charles Frigerio, which represents Defendant Bastrop County and filed the Motion to Quash the subpoenas. As Wyatt notes, no objections were filed by the witnesses served.

The Court first notes the scheduling order in this case contains no discovery deadline, so Bastrop County's contention that Wyatt is attempting to conduct discovery outside of such a deadline is false. Moreover, the Court agrees with Wyatt's contention Defendant Bastrop County, represented by the Law Offices of Charles S. Frigerio, is attempting to quash subpoenas on other non-parties in this case. As far as the Court can tell, the Law Offices of Charles S. Frigerio does not represent any of the parties served with subpoenas. Therefore, the Court DENIES Defendant Bastrop County's Motion to Quash.

The Court notes, however, Wyatt's subpoenas are deficient and do not comply with the federal rules. Federal Rule of Civil Procedure 45(b) provides: "Any person who is at least 18 years

-24-

old and not a party may serve a subpoena.  Serving a subpoena requires delivering a copy to the named person . . . ."  Examining the proofs of service provided by Wyatt, it is unclear what exactly he has done.  They indicate Wyatt "served" a copy of the subpoena to the parties by placing the copies "in the U.S. mailbox located on the Eastham unit in Lovelady, Texas."  *See* Proof of Service [#60].  The only signature on the page is Wyatt's, and the "server's signature" is blank.  Wyatt, as a party in the case, cannot serve the subpoenas.  Additionally, it is not clear where Wyatt actually sent these various proofs of service or whether the intended recipient actually ever received the subpoena.  As such, Wyatt's subpoenas are facially deficient.

### Conclusion

Accordingly,

IT IS ORDERED that Plaintiff Marc Wyatt's First Objection to the Denial of the Motion to Stay [#56] and Plaintiff Marc Wyatt's Second Objection to the Denial of the Motion to Stay [#58] are OVERRULED;

IT IS FURTHER ORDERED that Plaintiff Marc Wyatt's Objections to the Report and Recommendation [#59] are OVERRULED;

IT IS FURTHER ORDERED that the Report and Recommendation of Magistrate Judge Mark Lane [#54] is ACCEPTED;

IT IS FURTHER ORDERED that Plaintiff Mark Wyatt's Motion for Partial Summary Judgment [#39] is DENIED;

IT IS FURTHER ORDERED that Defendants Robert Anderson and James Davenport's Amended Motion for Summary Judgment [#42] is GRANTED;

IT IS FURTHER ORDERED that Defendants Robert Anderson and James Davenport's Motion to Quash [#61] is DENIED;

IT IS FINALLY ORDERED that Plaintiff Marc Wyatt's Amended Complaint [#33], with respect to the claims brought against the Bastrop County Sheriff's Office, Matthew Vernon, and Robert Madden Industries, is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e).

SIGNED this the _20th_ day of February 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE